SADIE COCKRELL, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THE PANTHER CREEK MINES, Defendant in Error.)

*Opinion filed October 22, 1927—Rehearing denied Dec. 8, 1927.*

WORKMEN'S COMPENSATION—*what is sufficient to show death was due to accidental injury.* Liability cannot be based on a choice between two views equally compatible with the evidence but must be based on facts established by a preponderance of the evidence showing a personal injury traceable to the employment; but this does not mean that a claimant is not entitled to compensation for the death of an employee due to septicemia which may have resulted from two causes, one of which is not shown by the evidence to have existed, while the other is traceable to an injury received in the course of employment.

THOMPSON, J., dissenting.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

KERR & LONDRIGAN, for plaintiff in error.

JOHNSON & PEFFERLE, for defendant in error.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

March 5, 1925, plaintiff in error filed her application for adjustment of claim with the Industrial Commission under the Workmen's Compensation act, alleging that her husband, M. B. Cockrell, died February 24, 1925, as the result of an injury received on February 11, 1925, in the course of his employment by defendant in error. This latter date was later changed to February 10, 1925. The cause was referred to an arbitrator, before whom it was stipulated that the only questions in dispute were whether or not the deceased received an accidental injury arising out of or in the course of his employment which resulted in death, and whether or not he left anyone to whom he owed a legal

obligation of support. The arbitrator found that he had received an accidental injury in the course of his employment which resulted in death but denied compensation. Upon review the Industrial Commission also denied compensation, and upon *certiorari* the decision of the commission was confirmed by the circuit court of Sangamon county. By leave of this court the record is here for review upon writ of error.

Paul Cockrell, a son of the deceased, testified that on February 11, 1925, he and his father were loading coal in the mine of defendant in error and that he saw his father accidentally hit himself on the nose with a pick; that he was picking on a chunk, and while bringing the pick up to strike the chunk it caught the side of the car, and, glancing off, struck him on the left side of the nose; that he saw a little red spot there; that his father just rubbed his nose a little and went back to loading; that he noticed a swelling that night when his father was washing; that after that his father's nose and part of his face were swollen until the time of his death. The witness later changed the date of the accident to the 10th. Nat Tindell testified that on February 12 he stopped at Cockrell's house and took him out to the mine in a car; that at that time Cockrell's nose was swollen and bruised. Charles Mattox testified that on February 14 he saw Cockrell upon the street and that he had a swelling on the side of his nose and face.

Dr. Samuel R. Magill, a practicing physician, testified that he saw Cockrell at his home, in bed, February 18, 1925, at which time he found a slight swelling on the side of his nose and on the left side of his face and jaw; that that evening the swelling had progressed more into his face and toward the ear; that his temperature rose to 100-4/5; that on the 19th the swelling had progressed so that the jaw was swollen like in the case of mumps; that on the 20th his temperature had steadily risen to 103 in the evening at nine o'clock, 104 at eleven o'clock and 105 at one o'clock;

that about three o'clock he was removed to a hospital, where he remained until his death, on the 24th; that the first day in the hospital the glands in his right elbow were swollen, as were also his big toe and heel; that at the time of his death the swelling of the jaw had increased and spread down the neck and through the body; that he attributed his death to septicemia. In reply to a hypothetical question stating that if on February 11, 1925, while at work using a pick in the mine, Cockrell struck himself on the left side of the nose or face; that there was a red spot there at the time and on the following day some swelling on the left side of the face; that the swelling gradually increased until the 18th; that upon examination witness eliminated any constitutional disease; that an abscess formed, such as in mumps or teeth trouble, and that the swelling gradually increased during the time of treatment; that his temperature increased and that he died as the result of septicemia,—the witness stated that it would be his opinion that the death was due to the injury to the face received on February 11. Witness testified that there was no possibility of an abscess from the teeth, as the teeth had been extracted and the gums had healed; that he examined the throat, and it was all right.

There is evidence to the effect that septicemia is an infection of the blood; that it is possible for the germ to enter an opening in the skin so small that it could not be seen with the naked eye; that a germ may remain inactive for several days, but when it starts it progresses steadily and may make its existence known at the site of entry or at some other place; that there is a connection between the left side of the nose and the maxillary glands in the jaw; that it is the infection of the blood passing through the body. Cockrell was examined by the company doctor Monday evening, February 16. He found a lump on the left side of the submaxillary region but could not find any seat of infection. He questioned Cockrell as to whether

he had any scratches or injury or if his throat had been sore, but he could not remember anything. Witness told him he had an abscess, and to go over to the garage and get an inner tube about three and a half feet long and fill it with ice and wrap it around his neck and maybe it would be all right in the morning. Witness testified that if four or five days later septicemia developed he would have an opinion that there was a connection between the abscess and the septicemia; that an abscess is nothing more than a condition of localized septicemia; that the same opening or abrasion of the skin could cause the abscess as well as septicemia; that if a man would have a bump on the nose witness could see a relation between that and the abscess on the neck.

Four other physicians testified as experts for defendant in error. Their testimony was practically the same, namely, that had the infection which resulted in septicemia been in the blood stream at or immediately after the alleged injury it would have caused a rapid pulse and an increase in temperature; that one method of travel of infection was by continuity,—that is, a wasting away of tissue from one structure to another; that that was impossible in this case for the reason that had there been a blow on the nose, as claimed, the swelling would have been from the nose down toward the jaw, where the abscess was, instead of from the abscess on the jaw upward and downward until it covered the side of the face and the neck. This testimony is minimized by the further testimony of four witnesses that the swelling appeared on the nose before it appeared on the jaw. They testified that another method of travel of infection is by means of the lymphatics; that this would be by means of drains; that the lymphatics from the nose drain through the deeper structures down into the throat at a point just behind the ear and that they would not drain or pass through the submaxillary gland; that it would be impossible for the infection to travel that way and get

into the submaxillary gland; that these were the only methods of travel for this infection from the nose; that they thought that the abscess in the submaxillary gland was caused by alkali; that the submaxillary gland is a secretive gland; that it secretes saliva to the lower jaw; that a little congestion of or alkali in the submaxillary duct would obstruct the flow of saliva and this in turn would set up an irritation which would cause or could cause an abscess.

While liability cannot be based on the choice between two views equally compatible with the evidence but must be based on facts established by a preponderance of the evidence, and to entitle a claimant to an award the preponderance of the evidence must show a personal injury traceable to the employment, (*Illinois Bell Telephone Co.* v. *Industrial Com.* 325 Ill. 102,) yet this does not mean that a claimant is not entitled to an award where death might have resulted from two causes, one of which is not shown by the evidence to have existed, while as to the other a direct causal connection is shown. In this case the evidence shows that on February 10, 1925, the deceased received an injury to his nose, causing a small red spot, which he rubbed; that within a short time thereafter the nose began to swell and the swelling gradually extended over his face, jaw and other parts of his body; that the swelling continued from that time until his death. We are of the opinion that the evidence shows a direct causal connection between Cockrell's injury to his nose and his death and that the decision was contrary to the manifest weight of the evidence.

The judgment of the circuit court must therefore be reversed and the cause remanded.

*Reversed and remanded.*

Mr. JUSTICE THOMPSON, dissenting.